**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Audubon Federal Savings and Loan Association, a Federal Savings and Loan Association, Plaintiff,**

v.

**Joseph SENKOVICH, Jr., individually and as sole Director and Trustee of Oceania Plaza Development Co., Inc., a dissolved Florida corporation, et al., Defendants.**

No. 88–277–Civ–Orl–19.

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 22, 1992.

Order Oct. 9, 1992.

246

William L. Eagan, Arnold, Matheny & Eagan, Orlando, Fla., Thomas D. Wright, New Smyrna, Fla. for defendants James Arata and Justin Arata.

E. Lanny Russell, Smith, Hulsey & Busey, Jacksonville, Fla. for plaintiff Federal Sav. and Loan Ins. Corp.

Richard M. Withers, Jacksonville, Fla., pro se.

Samuel J. Weiss, Winter Park, Fla., for defendant Felton McCray.

## MEMORANDUM OPINION AND ORDER

BAKER, United States Magistrate Judge.

**247**

## PROCEDURAL SETTING

This matter comes before the Court on motion of Plaintiff for a deficiency judgment following the court ordered foreclosure sale of certain real property in Volusia County, Florida. The motion was referred to the United States Magistrate Judge; and, subsequently, pursuant to 28 U.S.C. § 636(c), the remaining parties consented to jurisdiction of the United States Magistrate Judge to conduct all further proceedings in this case.

Following sale of the property, additional discovery was allowed as to matters relating to the claimed deficiency. The parties submitted detailed memoranda and presented evidence at a two day evidentiary hearing August 31—September 1, 1992. The factual background of this action is set forth in the Order granting summary judgment of foreclosure dated May 21, 1990. Pursuant to that Order, the property was sold at auction in November 1991, and the sale was confirmed by Order dated February 24, 1992.

## POSITIONS OF THE PARTIES

Plaintiff seeks individual judgments against the remaining Defendants for their respective percentage shares of the difference between the note balance (with accrued interest and other charges) and the value of the property (appraised as of the date of sale). Plaintiff concurs that set offs should be allowed for: (1) net income from operation of the property (including accrued interest) and (2) an appropriate percentage of the amount recovered on a fidelity bond which covered losses due to misconduct by officials of the Audubon Savings and Loan.

The Defendants, variously, raise the following issues: lack of jurisdiction over Defendant Withers, statute of limitations, a modification agreement, failure to produce the original mortgage, estoppel, set off, laches, fraud, election of remedies and general equitable principles asserted to bar a deficiency. Certain of the defendants also seek relief from admissions they made regarding their signatures on one version of the note evidencing the debt. The Defen-

dants also argue in favor of an earlier date of valuation.

For the reasons set forth herein, the motion for deficiency judgments is GRANTED.

## MATTERS ASSERTED IN BAR

■ **A. JURISDICTION**—Defendant Withers' suggestion that the Court lacks subject matter jurisdiction is misplaced. Withers argues that his motion to dismiss the complaint was granted and thereby removed him as a party to the action. In fact, however, reading his motion and District Judge Fawsett's order *in pari materia*, it is obvious that Withers' position that he is liable for only five percent of the debt was upheld but that the claims against him for foreclosure and possible deficiency were *not* being dismissed. The body of Withers' motion neither sought nor justified dismissal of the entire case. Judge Fawsett's order recognized the validity of the claims by granting summary judgment of foreclosure while recognizing the limits on each Defendant's liability. In no sense did the order suggest that Withers was out of the case so as to deprive the Court of jurisdiction [1].

■ **B. STATUTE OF LIMITATIONS**—Defendants rely on Florida's five year statute of limitations (§ 95.11, Fla. Stats.) as a bar to the motion for deficiency even though this action was filed within the five year period. Plaintiff, as a federal entity, is entitled to the benefit of the six year federal statute of limitations. *28 U.S.C. § 2415.*

■ Moreover, even if the shorter period were applicable, the filing of the foreclosure suit would be the tolling event, not the filing of the motion for deficiency. The statements in the Florida cases cited by Defendants are dictum in that the deficiencies were allowed in those cases.

The rule could hardly be otherwise. A deficiency, having been sought in a complaint, cannot be the subject of a motion until after judgment and sale of foreclosed property. A Plaintiff has at best limited control over the timing of entry of judgment. The right to a deficiency cannot be forfeited on such grounds.

■ **C. ABSENCE OF ORIGINAL MORTGAGE**—Florida procedure requires the production of the original mortgage and note in a foreclosure action. Florida law also permits the re-establishment of lost instruments. As it pertains to the deficiency issue now before the Court, the requirement of producing the original mortgage is inapplicable or procedural at most. The mortgage has already been foreclosed and the property sold. The Defendants have admitted the existence of the obligation and the signing of different notes evidencing the debt.

■ **D. ESTOPPEL TO SEEK A DEFICIENCY**—Defendants make two arguments arising from the delay in foreclosure and the possession and operation of the property by Plaintiff and its predecessors in interest. They argue first that equitable estoppel, laches or other principles totally bar any claim for deficiency. They also argue that a date for valuation different from the actual sale date should be used. This second argument will be discussed below.

From the evidence submitted and the applicable law, the delay and the operation of the property by Plaintiff do not bar a deficiency in this case. The Defendants did not seek or obtain a release of their liability when they acquiesced in Audubon's possession and operation of the property. Undoubtedly, they (and Audubon, for that matter) *hoped* the property could and would be sold in satisfaction of the debt. Wishful thinking is no substitute for prudent action. They retained the risk that the saving sale would not occur. Having failed to protect themselves in the original

---

1. Even if all claims against Withers had been dismissed, he would remain a party to the action. The complaint can be deemed to be amended to reflect the Court's rulings and to confirm to the evidence, even in the absence of a formal amendment. See Rule 15(b), Fed. R.Civ.P. Withers has shown no prejudice due to the state of the pleadings and has been allowed to assert all defenses of his choosing.

loan, or during the workout period and having failed to pay the debt, the Defendants are not in a position to seek relief on generalized equitable principles.

Defendants still rely on misconduct by Audubon officials or the purported modification agreement. These assertions are barred by Judge Fawsett's order granting summary judgment.

## VALUATION

■ Plaintiff presented competent, credible, and essentially uncontradicted evidence that the fair market value of the project in November 1991 was $3,350,000. The sale did not occur until 15 months after the order authorizing it. This delay is both unreasonable and unexplained for an asset which was generating insufficient income to cover accruing interest. While the Defendants could have sought an immediate sale, fixing the date was the responsibility of Plaintiff. Accordingly, for purposes of fixing the gross amount of the deficiency, the property should be valued as of a reasonable time after the order authorizing the sale rather than the actual sale date.

■ From the evidence submitted, however, no material difference in the fair market value of the property as of a reasonable time after the foreclosure sale and the actual sale date is apparent. Accordingly, the November 1991 valuation is accepted as proper.

■ The valuations offered by Defendants are not pertinent because they are as of dates long before the foreclosure. The possibility that the property could have been sold (as units or in bulk) at a higher price before passage of the Tax Reform Act is of no moment. Plaintiff was not required to sell the property at any particular time prior to the foreclosure order and cannot be charged with the effects of Congressional acts. Defendants were themselves able to sell the property or redeem the mortgage at any time so as to avoid the risk of market declines.

## SETOFFS

■ A. AETNA SETTLEMENT—Plaintiff made claims and filed suit against Aetna Casualty & Surety Company on a blanket bond covering officers of Audubon. That action included many matters not part of this property, and the total of the claims far exceeded the amount of the bond. This suit was eventually settled by the parties, with Plaintiff receiving $2,500,000 from Aetna, attributable to this bond.

Plaintiff has not adequately supported the percentage of the Aetna recovery which it now attributes to this project[2]. The evidence on this issue is generally unsatisfactory. To some degree, the proper amount to be allowed is necessarily arbitrary because the settlement involved a multitude of claims of unknown viability and a limited bond.

The Plaintiff was in a far superior position regarding information about and the actual structuring of the settlement. Its self-serving, *post hoc* allocation is unpersuasive. As urged by Defendants, the percentages of claims originally submitted provides a fairer measure of the setoff to be allowed, and any uncertainty should work to favor the Defendants. Accordingly, a setoff of $1,125,000 will be allowed for the settlement proceeds[3].

■ B. ADMINISTRATION OF THE PROPERTY—The Defendants did not strongly challenge the manner and results of the management of the property prior to the sale. In one regard, however, Plaintiff's own appraiser pointed out a debatable and costly decision made by Plaintiff's agent in the management of the property.

Although aware of the fact that the units were valued for *ad valorem* tax purposes at levels far above their fair market values, the property manager decided not to seek

---

**2.** Defendants' invocation of the doctrine of election of remedies is unavailing. Plaintiff is barred from a double recovery but has not elected inconsistent remedies. Allowance of an appropriate setoff avoids the double recovery.

**3.** This amount is 45 percent of the $2,500,000 settlement, representing the percentage of Plaintiff's original claim asserted to be due to this project.

re-assessment. This decision was not totally without justification, but it concededly was not a course of action which would be taken by a prudent property owner. Having taken control of the property (with the acquiescence of the owners), Plaintiff is responsible for reasonable management and maintenance of the project.

While the Defendants could likewise have sought re-assessment, the circumstances of the actual management of the property require that responsibility for this item rest with Plaintiff. The appraiser on whom Plaintiff relies to establish the value of the property estimates that approximately $66,000 per year could have been saved by seeking and obtaining a new assessment. This amount, together with imputed interest, should be deducted from the total amount of the deficiency for each year Plaintiff (and its .predecessors) had control of the project.

## RELIEF FROM ADMISSIONS

■ Defendants seek relief from the effect of admissions in their answers and responses to requests for admissions with respect to their execution of certain notes. Those motions are DENIED. Defendants have not shown good cause for their purported error in making the admissions which relate to matters within their personal knowledge. Inadvertence does not justify admitting the authenticity of an $8,000,000 obligation. Moreover, any "mistake" was not diligently or promptly detected despite opportunities and occasions to do so. Even more fundamentally, the continuing concession (in open Court) as to the existence of the debt moots any issue as to the execution of a particular note.

## CALCULATION OF JUDGMENTS

Complications regarding the effective dates of the various setoffs make calculation of net judgments more difficult than in the ordinary case. Accordingly, a hearing is hereby set for Thursday, October 1, 1992, at 3:00 P.M., in Courtroom # 5, U.S. Courthouse and Federal Building, 80 North Hughey Avenue, Orlando, Florida, to allow resolution of the amount of the judgments to be entered in accordance with the orders of this Court. No further argument on the substantive rulings will be entertained at that time. Counsel should exchange and discuss proposed forms of judgments at least three days prior to the hearing.

DONE and ORDERED.

## ORDER

Following the hearing regarding computation of the appropriate amounts to be entered as money judgments in this action, Plaintiff filed a supplementary memorandum regarding the calculation of interest, credits and charges related to the deficiency. As a result, the Court has reviewed the entirety of the proposed calculation.

The principal amount of the debt was fixed in Judge Fawsett's August 1990 foreclosure order at $7,969,383.24. In that same order, claims and credits were allowed for the following items:

| | |
|---|---|
| Costs | $ 4,625.10 |
| Taxes and insurance | 185,068.00 |
| Attorneys fees | 138,383.55 |
| Credit for net operating income | $ (695,935.70) |
| NET | $ (367,559.05) |

The net amount of these claims and credits should be used to adjust the principal balance. Plaintiff is entitled to prejudgment interest on the outstanding principal balance at the rate of 12% per annum (not compounded). From the date of default to the foreclosure order, allowable interest amounts to $5,811,317.93.

The foreclosure order did not result in entry of a money judgment upon which execution could be had. The order merely set forth the amounts found due and that would need to be paid to redeem the prop-

erty. Subject to the application of appropriate credits and allowance of additions, the outstanding balance continued to accrue interest at 12% per annum until entry of final, money judgments. 28 U.S.C. § 1961 does not apply to set the post judgment interest rate until the money judgment is entered.

As of August 28, 1990, then, the principal balance was $7,601,824.19. Credit for the Aetna settlement reduced the principal balance to $6,476,824.19. The sale of the property on November 26, 1991 further reduced principal to $3,126,824.19. This balance is further reduced by deduction of the tax overpayment of $396,000 and additional net operating income, leaving a final principal balance of $2,699,201.79. The interest accruals are reduced by imputed interest (at 12%) on the tax overpayments. The total net interest on the outstanding principal (as reduced from time to time) since the foreclosure order to date, therefore, is $1,284,883.10.

The net results of these calculations and applications of credits and debits means that judgment should be entered against the Defendants for their respective percentage shares of the total amount of $9,695,221.78. The portion of the total representing unpaid principal shall bear post judgment interest in accordance with 28 U.S.C. § 1961.

The portion of the judgment representing net prejudgment interest shall not bear post judgment interest. Nothing in § 1961 requires prejudgment interest to bear interest and Florida law forbids it. *See, e.g., La Faye v. Presser*, 554 So.2d 610 (Fla. 1st DCA 1989).

Local Rule 4.18 applies to the conclusion of this proceeding.

DONE and ORDERED.